Our next case is United States v. Feliciana. If I pronounced that correctly. And that's Ms. Pratt, Ms. Platt, I'm sorry, Ms. Platt, good to have you here. Thank you. Good morning, your honors. And may it please the court, Caroline Platt on behalf of Jaison Feliciana. The traffic stop that began this case was illegal and everything that followed should be suppressed as fruit of the poisonous tree. The park police officers in this case stopped Mr. Feliciana's vehicle without the required reasonable suspicion that he was in violation of the federal regulation at issue prohibiting commercial vehicles from traveling on the George Washington Memorial Parkway. In addition, inspection or purported inspection was not a valid inspection under the administrative exception under New York v. Berger. We, as the district court noted, there's sort of a dispute between the parties, whether this case is properly analyzed under Delaware v. Prowse or New York v. Berger. I'll start with Prowse. Judge Trenga held that there was reasonable suspicion in this case. The government argues both that there was no reasonable suspicion required or sort of alternatively, my understanding is that the mere existence of this truck is itself reasonable suspicion that Mr. Feliciana was violating the CFR 5.6. I think it's Title 36. We think that does not distinguish this case from Prowse because under subsection C of that regulation, the Department of the Interior, United States Park Service, shall issue a permit to drive a commercial vehicle on parkways under certain circumstances. And in this case, there was no reasonable suspicion to believe that Mr. Feliciana did not have such a permit. It's the same as Prowse where I need a driver's license to drive my Volkswagen. Can I ask you about those permits? You mentioned there's a couple of overlapping sections. 5.6C mentions only permits to access private lands within or adjacent to the park. But then I think it's 7.96F, right, that applies just to GW Parkway, refers to just permits in general. And I couldn't discern whether that reference to permits in general, the only permit that could be issued there is a permit to access private lands under 5.6C or if it includes other permits. Is it a big universe of permits or a small universe of permits? Do you know based on the CFR? I don't know, Your Honor, and I think that sort of leads to one of our other points, which is I think, and I want to say this carefully so as not to say more than I mean. I think that in a different case, it would be possible for the U.S. Attorney's Office to provide evidence such that the presumption that they're asking for, which is to say a presumption of reasonable suspicion, could be possibly shown on evidence presented. But they did not do that here. And so if I may offer a hypothetical, it would be easier to do that, I think, for the government at, say, Yellowstone than the GW Parkway, which, as I think you all know, is a majorly high-volume traffic road in the District of Columbia, greater metropolitan area. You're saying they can't stop commercial vehicles out there? Without reasonable suspicion that they're in violation. Because of this permit provision that they can't stop them. So I think, Your Honor, this is what I, which, if they. Run tractor-trailers up and down the road there. So I think, Your Honor, if, well, this was not an 18-wheeler tractor-trailer, to be clear, Your Honor, it was a box truck, but. Well, it was a box truck, whatever that is. So, that could also, but they didn't present evidence. They said it was a commercial vehicle. So, Your Honor. And it was described further as a box truck. Correct. And if, for example, the. It was a certified commercial vehicle inspector or something. But he inspected for what purpose, Your Honor, to get to what I'm saying. If, for example, the government had elicited evidence saying, we know, this is a hypothetical, I don't know this evidence, that there are 500,000 roads, cars a day that drive between Langley and the National Airport on GW Parkway. This is, you know, in the D.C. area. Is that where, is that the. This stop was very close to National Airport. All right. And so, from the Beltway to the Beltway. Say, if the GW Parkway goes from Beltway to Beltway. If the government had elicited, we know that 500,000 cars a day or vehicles a day travel on that stretch of road. And we know that we have only issued two permits for commercial vehicles. You know, in this, this jurisdiction of the National Park Service. Then I think the government could say, that is a presumption of reasonable suspicion that this box truck is not one of those two vehicles. We know that those two vehicles are pink Paul's Plumbing box trucks that can only get to Paul's Plumbing business, which is on this road. The government could have elicited evidence that they know that these commercial permits aren't issued. But they didn't do that here. For all we know, they've issued 1,000 commercial vehicle permits. But the government didn't present that evidence and it's their burden to show reasonable suspicion. They didn't ask Officer Alto anything like that. You're going to ask them that they can't stop commercial vehicles on the GW Parkway? On, on, no, I'm not asking you to hold that, Your Honor. That's what you're asking us to do. That is not what I'm asking you to do, Your Honor. That's why I don't understand it. That's not what I'm asking you to do. I'm asking you to say that in this case, the government did not elicit sufficient evidence to show that Officer Alto had reason to believe that this didn't show how scarce permits are. And they could have, maybe. Just two quick, so you're saying they can't, your view is they can't stop commercial vehicles on GW Parkway sort of randomly. It has to be with reasonable suspicion. Correct. Okay. And there, one of the government's responses to your argument, they didn't put up any evidence about how rare this is or nothing about, you know, the officer's experience and knowledge. You know, every time I've ever stopped a commercial vehicle and hasn't had a permit, is that that's because none of this came up until after evidence, the evidence taking portion of the suppression hearing was over. That this argument about no reasonable suspicion wasn't made in the early part of the hearing. And so, I take it they're saying you can't, you can't sort of charge us with putting on this evidence because you didn't alert us to the fact that we would need this evidence at the beginning of the hearing. I mean, we, so my colleagues did raise the claim that there was no reasonable suspicion to stop Mr. Feliciano. The argument before the first, the trial court, which in this case was the magistrate court, was that there was no reasonable suspicion for the stop in addition to the other claim about the illegality of the search of his shoes, which we're also pursuing here. And so, and as we pointed out in our reply brief, waiver, which the government raised, is, you know, the court passed on the issue, both. So, and if they had said, oh, you're going to raise this at the hearing, they easily could have said, Judge Anderson, would you please allow us to bring in Officer Alter? I mean, Officer Alter was there. They could have said, put him back on the stand, we'll ask him. Yeah, exactly. Before Judge Anderson. And then there was a hearing in front of Judge Trenga as well. And so, I mean, if they had a remedy, and the remedy could have been that day, the remedy could have been the next week. I mean, this is not an impossible situation. And it sort of gets to what I was saying to Judge King. We're not saying you could never stop a truck on the parkway. And we're not saying you couldn't have reasonable suspicion from seeing a truck on the parkway that's in violation. We're just saying the government didn't show that suspicion in this case. And it is their burden to show that the reasonable suspicion existed. And this is not the kind of fact that a court can take judicial notice of. I mean, for the judges in that part of the Eastern District of Virginia to say, well, we know that there are never commercial vehicles on the parkway. That is an inappropriate fact to take judicial notice of. The government has to be held to its burden to show that maybe the officers do know that there are no commercial vehicles allowed on that parkway. But they didn't testify to that here. The evidence isn't sufficient to show the reasonable suspicion existed for this stop. But I'm not asking you to hold that you can never stop a truck on the parkway. I'm asking you to hold that the government has to do more to show that the reasonable suspicion was legally reasonable here. It's more a failure of proof than a failure of police action on that day. And that's why, as I was saying, this case is more under Deliver versus Prowse than I'll get to New York versus Berger in a moment. Because it's illegal for me to drive my Volkswagen on the parkway without a driver's license and a registration. But they can't stop me to check to make sure that my driver's license and registration are in order. It's also so it's illegal to have a commercial truck on the parkway unless you have this permit. So why is this not like Prowse if the government doesn't show that they know that it is inherently suspicious because there are no permits issued or scarcely? The license you're talking about is pertinent to you personally. This permit's pertinent to the truck, the commercial vehicle. Correct. And this guy's entitled, a job title, apparently, is certified commercial vehicle inspector for the United States Park Service, right? Yes. And they run the parkway. And he's a certified commercial vehicle inspector. But the police are entitled to do traffic stops. And he says, I stopped it because it was a commercial vehicle. But, Your Honor. And he asked him after he stopped it if he had a permit. That doesn't mean he can stop him without reasonable suspicion, Your Honor. Just like the police can't stop me without reasonable suspicion. The hypothet, that's what I'm getting at. But not in the criminality, Your Honor. You put yourself in the middle of it. Well, sure. I mean, anybody for the driver's license. We can use John Doe if you prefer. But it doesn't change the reasonable suspicion requirement. And here, the government is asking for a presumption of reasonable suspicion that really doesn't exist in any other milieu that I can think of, nor that the government offered an example in any level of this case. Similarly, so the government moves from the sort of Delaware versus Prowse bucket to New York versus Berger to say it's an administrative exception. If you look at the three prongs that we've laid out and that the government has laid out of New York versus Berger, they all speak to a regulatory statutory scheme of administrative inspections. And here, while there is a prohibition and a recognition of permits, as Judge Rushing noted, there is no structural scheme of inspections, such as the junkyard automobile inspections at issue in New York versus Berger. There's a prohibition, as there are many prohibitions in the law, but there's no scheme. Such as, for example, in the interstate commercial trucking cases, which this is not, such as Fort from the Fifth Circuit or Maldonado from the First Circuit, there are way stations and there's a scheme of regulation of what I would call freight interstate trucking. That is not what is at issue here. Because the CFR provisions cited by the government don't have a structural regulatory scheme for inspection. They apply to trucks, right? They apply to any kind of a car that's being used for a commercial purpose. For, I mean, not taxis, right? For items, not people. It doesn't have to be a truck. Right. It could be a single passenger vehicle. Yeah, that's right, Your Honor. And again, so the existence of a prohibition is not the same as a regulatory structure, as a lot would say. Which is why I think Berger is just a mismatch to the facts of this case, which is why we get closer to Delaware versus Prowse, which is why I think the government's backup argument is to ask for a presumption of reasonable suspicion. But as I said, first of all, I can't think of any kind of cases where there is a presumption of suspicion. And here, like I said, I do think it's possible. And I think the court could write that it would be possible for evidence to be elicited that would allow for that. It just wasn't elicited here. And it is more akin to a sort of, and the court, I think it was the district court, rather than the magistrate judge, came pretty close to saying, oh, well, we all, like to taking it as known, as opposed to relying on evidence in the record. And that's what we would object to here. Did the magistrate judge make a finding it was a commercial vehicle? Yes, Your Honor. He did, or she did, right? Yes. Is that reviewed for clear error? We're not disputing that it was a commercial vehicle, Your Honor. Pardon? We're not disputing that it was a commercial vehicle, Your Honor. OK. All right. What we're disputing is whether there was reasonable suspicion to believe that. It is a commercial vehicle for the purpose of your appeal. The truck that Mr. Yes, it is a commercial vehicle. But the police officers did not have reasonable suspicion to believe that he did not have a permit to drive it on the parkway. Can I ask you a question? Are you still maintaining your argument about whether there was probable cause for the arrest and the search? Because it was not in your reply brief. Yes, we are maintaining it, Your Honor. And if you want me to address it quickly. No, no, I just wanted to know whether you were conceding. No, we have not abandoned this argument. I think I was trying to think of the sort of shortest way. And I think our positions are fairly clear, which is, I think, why we didn't address it. What I would say is, Your Honor, it was the third search of his person and the fourth search overall, if you include the search of the vehicle. And I think, as we said clearly, I think in our opening brief, there's got to be a point at which probable cause dissipates. Marijuana cases are interesting because it's an odor. And so there was, at some point under Humphreys, probable cause to believe there was marijuana there. So I guess one way to still this question is, how many searches incident to arrest do you get if you're the law enforcement until you find the thing you think you're looking for? I mean, could they have searched him seven times? They searched him four times. They searched him three times and the truck once. And so that's, I think, a really pithy way to say it. How many searches incident to arrest did they get? I guess the governor would say it all comes sort of as one search because the first ones weren't so thorough. Like, they only searched his feet once. That's correct, Your Honor. But they kept getting additional information. No, Your Honor. They didn't get it in a first search. And the officers also, I mean, they weren't frisks the first two. I mean, the officers also, they have the same last name, said they went into his pockets the first two times. They weren't frisks. They were searches. But this is a matter of common sense. If someone smells like marijuana and you search a couple of places and you don't find the marijuana, I don't see how the probable cause dissipates until you search everywhere. Well, I understand the logic behind that. But I would also say somebody who smokes marijuana could smell like marijuana. And also, He reacted when they asked him about his shoes or his feet. I don't know that that's in the record, Your Honor. I thought he stomped his feet. I don't believe that that's. And they didn't want him to look, didn't want to take his shoes off. He certainly did not consent to the search and noted that he thought it was a violation of his rights. Do they consider that kind of thing? I don't think that he stomped his feet. I don't think that's in the record, Your Honor. And they consider that he didn't want him to look at his shoes. They cannot consider his refusal to consent to a waiver of his rights. So had they asked him to consent at that time? They did ask him to consent and he said no. They can't consider that. They cannot consider a refusal to waive your rights. So, Your Honor, I would just say, I think we've. I don't think you want a rule, do you, that says you can only do one search instead of an arrest. Because then we'd say, well, you can, they have to make that search count, right? So if I smell marijuana, it's going to be a strip search because I only get one chance? I'm not sure you can strip search someone in such a restaurant. I'm definitely not conceding that. But I think, I mean, I think. If they go in his pockets and. They did go in his pockets. They go in his shoes and they still don't find, like, well, maybe it's in your socks. Well, well, maybe it's in the pants. Maybe it's under, you know, under your undershirt, taped to your body if it's raw marijuana. We don't want to make a rule that encourages the first search to be, to the max, if it doesn't need to be. I see your point, Your Honor. But I think this rule could be subject to abuse either way. Because we also don't want a rule where they can just search until they find whatever they want. You know, like 12 times to be, you know, hyperbolic. I think I think it could cut either way. There's three times here. Three of the body, yeah, four including the truck. So, and the first two, Your Honor, did include the pockets. They were not frisks. So I see my time's expired.  I'm happy to see you on rebuttal. Thank you, Your Honor. Thank you very much. You save some time. Thank you, sir. Mr. Grano. Good morning, Your Honors. May it please the court. Aiden Grano for the United States. Although the defendant did not object to the initial traffic stop until after the close of evidence, we believe the record is sufficient to conclude both that there was reasonable suspicion for a traffic stop and that the criteria for an administrative inspection is satisfied. Once that initial traffic stop is lawful, the odor of marijuana creates probable cause to search both the vehicle and the defendant in this case as this court has repeatedly held. Based on all of that, we would ask that the court affirm the magistrate judge's suppression, denial of the suppression order. Moving first to the question of reasonable suspicion. My colleague on the other side suggests that we're asking for a presumption of reasonable suspicion, which I don't think is quite the proper framing. What we're talking about is an observable violation of a regulation, the presence of a commercial vehicle on a road where commercial vehicles are prohibited. There is a carve out for if you have specific special authorization to be on that road at that time. But no court that I'm aware of. I have a question about that. I thought that was an attractive argument about the structure of the statute, but then I looked at the Virginia's driver's license statute, or commercial driver's license, or even just a normal driver's license. And it's phrased the same way. No person shall drive a commercial motor vehicle in the Commonwealth unless he has a commercial driver's license. Same with a typical driver's license. No one shall drive without the driver's license. So I'm not sure that this argument about the structure of the statute helps you. I understand your question, Your Honor. I've actually thought about this in trying to think about how this case maps on with Delaware v. Prowse and then also what the Supreme Court is currently considering in Kansas v. Glover. And I think the distinction is the one that Judge King raised. One is about whether the person driving has a particular authorization, and one is about whether the vehicle is authorized to be there itself. So you can see a prohibited vehicle on a road where it is prohibited, absent special authorization. You can't see from a person driving whether that person has a driver's license. And that's the distinction the Supreme Court drew in Prowse. It's like asking for registration, which is also not allowed. You can't just stop a car and say, I want to see your registration. But nothing about seeing the car tells you whether that car is registered or not, or is operating without registration. Here, you're seeing an actual class of vehicle that is prohibited on these roads. Well, no, it's prohibited if you don't have a permit, just like you're prohibited to drive a commercial vehicle if you don't have a license. I think that's true, Your Honor. But again, we're dealing with a situation where there's a categorical prohibition and a carve-out, unlike driver's license, which is a licensing scheme. So that is- But they're written as a categorical prohibition with a carve-out. But they're a licensing scheme as opposed to a- Permitting. Permitting. I think there's a difference, Your Honor. You may not agree with me on that. I think- I just want to make sure I understand. You heard me ask your opponent about the CFR, the overlapping CFR- Yes. Do you know, and it's fine if you don't, but do you know if this category of permits for the parkway includes permits other than the private lands access? I don't know, Your Honor. I don't know one way or the other. I can talk to the court about what we would have put on in evidence if we'd had notice, but sticking to the record that we have, it's not in here, and I don't know what other permits are authorized by the superintendent of parks. Just to be sort of straightforward about my concern, just, I mean, I can imagine all kinds of evidence the government could have put up at the hearing, and it could have been statistical evidence, it could have been the officer's experience and knowledge, but there was just none of that. And in light of that, I guess I don't see why there was, you know, particularized reason to believe that this vehicle wasn't licensed. So I'll deal somewhat with what is in the record about what the officer actually testified. So we know that he's been, he's both a certified commercial vehicle inspector, and that he's been with the park service for 11 years. And on cross-examination, he specifically talked about the fact that the permitting process goes through the park service, and that he stated his basis for stopping the vehicle was that it was a commercial vehicle operating on the parkway. Now, in the reasonable suspicion and probable cause context, we give deference to the experience of officers on the ground. And I think the only inference- And if he had testified that, and so I pulled him over because I had reason to believe he didn't have a permit, I mean, I'd still be troubled that we didn't know what the basis, but he didn't even say that. He just said, I saw it was a commercial vehicle, so I thought I'd check to see if it had a permit. But I think it's a fair inference to draw from that, Your Honor, that in his experience, commercial vehicles on the parkway don't have permits. I do not think that's a fair inference. I think it is just as reasonable to draw from that that he thought he was entitled to pull it over to see if it had a permit. He didn't know one way or another, and he wanted to check. So, Your Honor, this goes back, I think, to some first principles on what reasonable suspicion requires. The way the Supreme Court has defined probable cause in the first instance is that it doesn't require a prima facie case of illegality. It only requires a substantial chance of criminal behavior. And here, and they've repeatedly said that reasonable suspicion is a quantum less than that. I think the rule the defendant is asking for is, as Judge King pointed out, a rule that you can't stop commercial vehicles on the parkway unless, for some reason, you already know that specific vehicle doesn't have the permit. You have some reason to believe it. If he had testified, look, in my experience, most of the commercial vehicles I see on the parkway turn out not to have permits. Maybe that's enough for reasonable suspicion. It doesn't seem particularly, it doesn't seem especially particularized to me, but that's a whole separate debate. But it sounds like your opponent is conceding. That might be enough. But there's just, but he didn't even say that. Right, Your Honor, and again, we're in a sort of odd posture here because we didn't know the initial traffic stop was being challenged. So my concern is that we shouldn't be making a lot of law based on this very odd posture where the government never put on a case for reasonable suspicion. And Your Honor, I think if you find that the record is insufficient on the basis of both reasonable suspicion and that the administrative inspection doctrine doesn't apply, we think the appropriate remedy would not be suppression of the evidence, but remand to allow us to put that case on. Have you ever asked for a remand in your briefs? We have not. That's an afterthought for this morning. Well, that's a, we think you can affirm on this record. If the court disagrees with us, we would prefer a remand to suppression. This is not an enormous case. Can I, this is, it's really none of my business. I'm just curious. I mean, the sentence here was. It's not an end to a big case. Right, like you really want a remand on whether this guy, what was the sentence here? I believe it was four days intermittent incarceration and a $300 fine, Your Honor. Okay, so you want a remand so that the government can put on a case here? For purposes of what this case would mean in the future and when the government is sort of presented with a new argument at the end. The only sentence was, when the government doesn't put on a case, there's no reasonable suspicion. It wouldn't mean anything in a case where the government did put on a case. I think that's true, Your Honor. I think our concern here is that if defendants are allowed to preserve arguments after the close of evidence and we can then be held to the lack of evidence in the record, that's a problem for us. Right, like you're right there. I mean, why, once the defendant makes this argument, why don't you say, oh, hang on, if that's your argument, we'd like to recall the officer so he can tell us about his experience and if we need a continuance, we'd like one so that we can get some statistics for you. The district court had a shot at this issue. Yes, Your Honor. That's what that waiver stuff's about. The district court, indeed, had a shot at the waiver. So there's two stages. There's the magistrate judge where it was presented in closing argument and then there was the appeal to the district court which affirmed the magistrate judge's order. Is there anything in the record here that defines what a certified commercial vehicle inspector does? No, there is not, Your Honor. Just... Is there anything in any papers published by the National Park Service or somebody that we take judicial notice of? So there are the CFR provisions that deal with the powers that a commercial vehicle inspector has, but... Look, the CFR, you got something about that. Yes, Your Honor. So 396.9, 36 CFR, 396.9. What is it? 36 CFR, 396.9. That defines a commercial vehicle inspector? It sets out the authority of a commercial vehicle inspector to inspect commercial motor vehicles in transit. So this sort of goes a little bit to the administrative inspection doctrine which I can turn to now if the court is interested. This sort of overlaps substantially with a lot of these facts, but as seven federal circuits have held, commercial trucking is so highly regulated that it falls within the administrative inspection doctrine. And this is where the statutory scheme sets out a pervasive set of regulations, notifies individuals that they will be subject to periodic inspections and search, and sets out a sort of essentially appropriate time, place, and manner. You're saying your argument is that this was an administrative search authorized under the Federal Motor Carrier Safety Administrative Regulations by an authorized agent searching for compliance with those regulations. Correct, Your Honor. That's what he was looking for, to make sure that they were in compliance with the FMCSA regulations. And that is what he testified to, that he stopped to check to make sure that he had the permit for commercial vehicles on the parkway. But the permit comes under the DOI and Park Service regulations, not under the Federal Motor Carrier Safety Administrative Regulations. So it's both. The Federal Motor Vehicle Safety Act regulations sweep in the DOI regulation. And the basis for that is 39 CFR 392.2, which is a requirement that when operating a commercial motor vehicle, you are in compliance with laws, ordinances, and regulations governing the operation of those vehicles. So the DOI regulation is a part of, or essentially a limitation on commercial motor vehicles on a particular road is incorporated into the administrative scheme in part 49 of the CFR. Okay, okay. And does it matter, is it not a, does it matter that the DOI regulations and the permitting requirement that the officer was trying to enforce here extends not only to trucks, but also to passenger vehicles? I think we could not use the administrative inspection doctrine if it's not a commercial motor vehicle within the DOT regulations. But it doesn't matter that the permit requirement that's being enforced here is not a trucking requirement. Right, because the trucking requirements say they must be operated in accordance with these other regulations. So now it doesn't specifically cross-reference, I don't wanna mislead the court, it doesn't specifically cross-reference DOI. Okay, but it does say if you are operating in compliance, then that's something that can be stopped and inspected. Is there any case that's ever held that? Yes, Your Honor. Delgado in the Ninth Circuit, which we cited in our string site footnote about the pervasive regulations of the industry, there is actually a very similar. Was that a Department of Interior thing that they were? Sorry, no, it was not, Your Honor. So this particular scheme that you've, I don't wanna use any kind of a normative phrase here, but this scheme that you have put together, this interesting combination of Department of Interior, park service regulations, layered on top of the FMC regulations, there's no case law on that. I have not found any, no. Delgado deals with a completely suspicionless stop of a commercial motor vehicle in transit. There was no basis, it's just the officer didn't recognize the commercial vehicle and said, I wanna conduct an inspection. Okay, but the idea that we cobble together these two different regulatory regimes and take away from that kind of a burger sort of administrative scheme, that would, we'd be the first court to say that. Correct, so the operative fact here is that the actual vehicle stopped and inspected is a DOT commercial motor vehicle within the meaning of those pervasive regulatory statutes. This would not apply to the other, quote unquote, commercial vehicles as defined in DOI. You're talking about the footnote on page 17. Yes. So Delgado from the Ninth Circuit is the closest. I see it, yeah. I think given the problem between dividing whether this is a reasonable suspicion case or an administrative inspection case comes from the fact that the regulation that would provide the basis for reasonable suspicion is a regulation on commercial vehicles. So they overlap and I think whichever path the court is most comfortable with is equally viable. In this case, I think that given with the amount of regulations that attach to commercial vehicles and given that my friend on the other side has already acknowledged that this is a commercial vehicle, the cleanest solution is probably to apply the administrative inspection doctrine and that way you can avoid, Judge Harris, what you were saying, the concerns about on this record, is there enough basis? I think that given the way this court has described what a valid administrative inspection statute is in LeSueur also helpfully reinforces. If it's an administrative inspection, does that alter anything about what happened after the stop relating to locating them and seizing the marijuana? No, Your Honor, because as soon as Officer Alto stopped the commercial vehicle, that's when he smelled the odor of raw marijuana and under this court's precedence in United States versus Palmer and Humphreys smelling marijuana at that point creates an independent justification to continue the traffic stop and to conduct the probable cause-based searches of the vehicle in one instance and of his person under Humphreys. That's your argument that the seizure should be sustained? Yes, Your Honor, so as long as the initial stop is lawful. Was this argument presented to either the magistrate judge or the district judge? The search incident to arrest? On your argument now. Yes, Your Honor. Administrative inspection. Yes, Your Honor. That legitimizes the seizure. Yes, Your Honor, it was presented at least to the district court. I think the magistrate judge ruled without hearing argument from the government at the magistrate judge stage, but both of these issues were briefed to the district court on appeal from that judgment. Unless the court has any further questions, we will rest on our briefs. Thank you very much, sir. Ms. Platt, you don't agree with much of that, do you? I don't, with all due respect to my colleague from the U.S. Attorney's Office. I guess to start with the procedural point, if the government had wanted to ask for remand for more evidence, the appropriate time to do that would have been the first appeal to the district court and not the second appeal to this court because the district court was sitting as an appellate court. Well, if we wanted to get these things right, we could remand if we probably wanted to. Or we could get additional briefing. We've done things like that. I don't question Your Honor's authority to do that. Our primary goal is to get them right. Well, Your Honor can get the law right without further evidence, because as Judge Harris noted, what you can say in this case, I'm not asking you to say they can never stop a vehicle. That's true, and it's kind of an afterthought. I mean, that's what he admits. And I mean, you could even say they've waived their request by not making it in the first appeal. He was trying to say that you waived because you didn't make a timely motion. I'd agree with you on that. You didn't waive anything, and I don't think he's waived anything either. We've got to try to get things right. Always, Your Honor. That's our prime interest. You've got a prime interest in your client, as you should. Indeed. I would like to note that the district court's reasoning on the Berger question was not that the commercial vehicle was part of this pervasively regulated industry. The district court actually held that the existence of the GW Parkway was what made it a pervasively regulated. It said Enclave was the pervasively regulated thing, not that this was a pervasively regulated industry. I'd also note that all of the DOT regulations and also cases, including Delgado and Fort and Maldonado, they're all in the footnote that Judge King was just looking at in the red brief. Those are all about interstate commercial trucking cases and industries, which is not the same thing as here. So when I say that I concede that my client's vehicle was a commercial vehicle, I'm not conceding that it is a commercial vehicle for DOT purposes. I'm conceding it's a commercial vehicle under the Department of the Interior Park Regulation 5.6 at issue in this case, which are two different definitions. So for purposes of the Federal Motor Carrier Safety Act, I have no idea what version of vehicle categorization my client's vehicle would fall under. I'm only conceding for purposes of 5.6, which he is charged with violating here. I think that may or may not be an important concession. Regardless, I think that Judge Rushing and Judge Harris, your questions indicate that you understand with regard to the licensing scheme, I don't think the existence of a permit is any different structurally or meaningfully as the existence of a requirement that my car or your car or anyone's passenger vehicle be licensed and registered and inspected by whatever state it is in or whatever state it lives in as a structural matter. And that's why reasonable suspicion should not be presumed from the mere existence or visible view on the parkway without, as we said, evidence being elicited by the government that in his experience and training, hypothetically, only two trucks have ever had a permit in his 1,000 stops, et cetera. But that kind of statistical evidence, Judge Harris, you're right. I think in a different case would change the outcome. As Judge King noted, I'm only asking in this case, this outcome from my client is that they didn't do what they needed to do to present that evidence. So I think, Judge King, to your concerns, the holding here can be quite limited. It's only that the government failed to meet its burden one time, not that they never could do so. So I think the other thing I'll say, they mentioned United States v. Delgado. There, there was a state statute at issue that allowed the inspection, which is why that is a burger case and not unlike this one, because there is a regulatory structure to analyze, unlike here, where I think, while I admire the creativity of their argument that weaving together every truck regulation in the federal code should work, I don't think that's what happened here. Nor do I think that that's necessary to this case. If the court has no further questions, I would ask you to reverse the district court and suppress the evidence against my client. Thank you very much, Ms. Platt. Thank you, Your Honor. Appreciate your work. We're going to come down and brief counsel and then go to our final case today.
judges: Robert B. King, Pamela A. Harris, Allison J. Rushing